UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | : | |
| | : | |
| VERTEX FAB & DESIGN, LLC, | : | CHAPTER 7 |
| | : | CASE NO. 15-11803-JNF |
| Debtor. | : | |
| | : | |
| | : | |
| DONALD R. LASSMAN, CHAPTER 7 | : | ADVERSARY PROCEEDING |
| TRUSTEE VERTEX FAB & DESIGN, | : | CASE NO. _____ |
| LLC, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| VERTEX RAILCAR | : | |
| CORPORATION,VERTEX RAIL | : | |
| TECHNOLOGIES, LLC., & DONALD | : | |
| G. CROTEAU | : | |
| | : | |
| Defendants, | : | |
| | : | |

## ADVERSARY COMPLAINT

## I.    INTRODUCTION

Donald Croteau ("Croteau"), as manager and sole owner, unlawfully caused the Debtor,

Vertex Fab and Design LLC ("Vertex Fab" or the "Debtor"), to transfer its most valuable assets,

namely railcar design drawings, to a newly created entity, Vertex Rail Technologies LLC

("Vertex Rail Tech."), which is wholly controlled and majority owned by Croteau, without

receiving any reasonably equivalent value. While he was still acting as manager of Vertex Fab,

Croteau also diverted substantially all of his own efforts to developing opportunities for Vertex

Rail Tech.  In addition, from 2013 through early 2015, Croteau also directed the efforts and actions of Vertex Fab's key employees to the development of Vertex Rail Tech.

After extracting all of the valuable assets and resources from the Debtor, Vertex Fab, for Vertex Rail Tech.'s benefit, Croteau then negotiated the transfer of Vertex Fab's assets from Vertex Rail Tech. to Vertex Railcar Corporation ("Vertex Rail Corp.") as part of a joint venture agreement.  Through these transfers and diversions of resources, Croteau left Vertex Fab with no ability to continue its operations and no ability to pay its substantial debts to its numerous creditors.  Instead, once Vertex Rail Tech. was up and running, Croteau used Vertex Fab's assets and efforts solely for Vertex Rail Tech.'s future benefit, and abandoned Vertex Fab's business operations and creditors, ultimately filing a bankruptcy petition for Vertex Fab.  To this day, Vertex Rail Tech. and Vertex Rail Corp., with full knowledge of the prior fraudulent transfers of the Debtor, Vertex Fab's assets, continue to enjoy the benefits of Vertex Fab's most valuable assets under the guise of separate corporate entities.

The Plaintiff, Donald R. Lassman, Chapter 7 Trustee (the "Trustee") of the bankruptcy estate of Vertex Fab, now brings this adversary proceeding to recover damages to the Debtor caused by the fraudulent transfer of Vertex Fab's assets to Vertex Rail Tech. and Vertex Rail Corp. pursuant to 11 U.S.C. §§ 544, 548, 550, and Massachusetts General Laws c. 109A.

The Trustee also seeks to recover from the defendant Vertex Rail Tech. all amounts that Vertex Fab, now a Debtor in this bankruptcy proceeding, owes or will owe under multiple successor liability theories of recovery.  The Trustee seeks a further declaration pursuant to 28 U.S.C. § 2201 and Mass. Gen. Laws c. 231A that Vertex Rail Tech. is liable for all the Debtor's obligations and for all the administrative and other expenses the Trustee incurs in administering the bankruptcy estate.

The Trustee further seeks an award of damages against Croteau individually on account of the damages he caused to Vertex Fab through his breaches of the fiduciary duties of care and loyalty he owed to Vertex Fab and its creditors.

## II.    JURISDICTION, VENUE AND STANDING

1.      The Trustee brings this adversary proceeding pursuant to 11 U.S.C. §§ 101-1330 of the Bankruptcy Code and Rule 7001 of the Federal Rules of Bankruptcy Procedure.

2.      This is a core proceeding as defined in 28 U.S.C. §157 relating directly to the property and affairs of the Debtor and the administration of the Debtor's estate. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 157 (b)(2)(A), (H) and (O).

3.      Because this proceeding arises under Title 11 and arises in a bankruptcy case that is pending in the District of Massachusetts, Eastern Division, venue in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## III.    PARTIES

4.      The Trustee is the duly appointed Chapter 7 Trustee of the Debtor's bankruptcy estate and maintains the right to bring and prosecute all actions against the Defendants pursuant to 11 U.S.C. §§ 544, 548, 550, and Mass. Gen. Laws c. 109A.

5.      Defendant Vertex Rail Tech. is a Massachusetts limited liability company with a principal place of business at 202 Raleigh Street, Wilmington, North Carolina, 28412.  The sole manager of Vertex Rail Tech. is Donald Croteau.  Vertex Rail Tech. filed its certificate of organization with the Commonwealth of Massachusetts on March 26, 2014.

6.      Defendant Vertex Rail Corp. is a Delaware corporation with a principal place of business at 202 Raleigh Street, Wilmington, North Carolina. Vertex Rail Corp. was incorporated in April 2015.

7.       Donald G. Croteau ("Croteau") is an individual who, upon information and belief resides in North Carolina. Croteau is the manager of Vertex Rail Tech. and the Chief Executive Officer of Vertex Rail Corp. Croteau has a business address of 202 Raleigh Street, Wilmington, North Carolina.

## IV.    FACTUAL ALLEGATIONS

8.       On May 5, 2015, Vertex Fab filed a voluntary Chapter 7 petition (the "Petition Date"). On May 6, 2015, the Trustee was appointed as the Chapter 7 Trustee of the bankruptcy estate of the Debtor.

### A.    The Debtor's Initial Business Purpose and Croteau's Diversion of Vertex Fab's Business Assets and Resources

9.       Prior to 2013, Vertex Fab was engaged in the design, manufacture and assembly of steelworks, notably vessels and tanks for industrial uses.

10.      In May 2012, Croteau acquired a 100% ownership interest in Vertex Fab through a transaction with Recovery Capital LLC ("Recovery Capital").

11.      Croteau held 100% of the ownership interests in Vertex Fab from May 2012 through the Petition Date.

12.      As part of Croteau's acquisition of Vertex Fab, Recovery Capital agreed to lease certain equipment to Vertex Fab. Under the equipment lease, Vertex Fab was required to pay $9,000 per month to Recovery Capital for the period from May 1, 2013 through April 1, 2014, and then $4,500 per month thereafter through April 30, 2017.

13.      Beginning in mid-2013 and continuing until the Petition Date, Croteau changed the focus of Vertex Fab's business from the design, manufacture and assembly of steel vessels, tanks, and related parts, to the design of railroad cars for later manufacture and sale.

4

14.     As part of the shifting focus of Vertex Fab's operations, Croteau reassigned existing Vertex Fab employees to tasks associated with the design of railcar drawings.

15.     At Croteau's direction, Shane Wiswell and Gregg Tavares, Vertex Fab's principal design professionals, dedicated the majority of their time, while on the Vertex Fab payroll, to working on rail industry related matters, including railcar design drawings.

16.     At Croteau's direction, Vertex Fab's designers worked from approximately May 2013 through November 2013 on creating an initial tank car design.

17.     In mid-2013, Croteau also caused Vertex Fab to hire Daniel Bigda ("Bigda"), a long-time railcar industry participant, to help identify and pursue opportunities in the railcar manufacturing industry.  Bigda had previously operated a company called Boxcar Services, LLC, which, among other things, was a lessor of railroad freight cars.

18.     In April 2013, at Croteau's request, Boxcar Services presented Vertex Fab with a proposal for a "Potential Strategic Vertical Relationship" whereby Vertex Fab would provide engineering and manufacturing support for Boxcar's back-log of rail car orders.  See Exhibit 1. Instead of pursuing that potential strategic relationship, Croteau decided to hire Bigda directly. Thereafter, in around September 2013, Croteau entered an agreement through which Croteau agreed to purchase Bigda's interest in Boxcar Services.

19.     At all times from approximately May 2013 through December 2014, Bigda was on Vertex Fab's payroll.  Bigda never performed any work for Vertex Fab's existing customers. Instead, Bigda focused on work that was ultimately intended to benefit only Vertex Rail Tech.

20.     By March 6, 2014, at the latest, Croteau also was informing Vertex Fab's suppliers that "[w]e are moving heavily into the rail industry."  See Exhibit 2.

21.     At Croteau's direction, Scott Bauer ("Bauer"), Vertex Fab's General Manager, spent at least fifty percent of his time, from at least early 2014 onward, working on Vertex Rail Tech. related matters.  Bauer's tasks included handling requests from potential Vertex Rail Tech. investors, developing and implementing Vertex Rail Tech.'s business plan, identifying potential locations for Vertex Rail Tech.'s manufacturing operations, and providing sales support for potential Vertex Rail Tech. customer orders.  At all times through at least the end of 2014, Bauer was paid as an employee of Vertex Fab.

22.     In line with redirecting Vertex Fab resources to railcar matters, Croteau and other Vertex Fab employees also spent a substantial amount of their time dealing with the Association of American Railroads ("AAR"), the entity that certifies the viability of railcar designs for use on American railways.

23.     By August 2014, Croteau took the position, when allocating resources between existing Vertex Fab customer work and railcar related matters, "that no one should come off rail …."  See Exhibit 3.

**B. <u>Vertex Fab Created and Owned Railcar Design Drawings That Were Worth at Least $2,000,000 According to an Independent Valuation Report</u>**

24.     In February 2014, Tucker & Meltzer ("Tucker"), a valuation advisory firm, prepared a "Calculation of Value Report" regarding the fair market value of the railcar design drawings as of December 31, 2013 ("Valuation Report").  See Exhibit 4.

25.     In providing information for the Valuation Report, Vertex management estimated that 4,750 hours of professional engineering time had been devoted to create the railcar design drawings.  See Exhibit 4, p. 7.

26.     Vertex Fab employees, while on the Vertex Fab payroll, performed substantially all of the work on the railcar design drawings.  In addition, Vertex Fab paid $65,000 for a "finite element analysis," based upon the railcar design drawings.

27.     Using the accumulated net asset value method, Tucker calculated, based solely on the cost of Vertex Fab employee time devoted to creating the plans, and other costs incurred, that the railcar design drawings had a fair market value of $1,252,500 as of December 31, 2013.  See Exhibit 4, p. 7.

28.     Using the relief from royalty method, Tucker calculated that the railcar design drawings had a fair market value of $2,507,640 as of December 31, 2013.  See Exhibit 4, p. 8.

29.     Tucker concluded its Valuation Report by presenting a weighted fair market value of the railcar design drawings of $2,200,000 as of December 31, 2013.  See Exhibit 4, p. 8-9.

30.     After receiving Tucker's Valuation Report, Croteau immediately began using that Report in connection with his fundraising efforts for Vertex Rail Tech.  In that regard, in an email dated April 4, 2014, Croteau represented to at least one potential funding source:  "You will see that even without any orders the package has a value of over $2 million."  See Exhibit 5. Croteau further noted that the drawing package "can be used as collateral against any investment."  See Exhibit 5.

       *i.   Croteau did not form Vertex Rail Tech. until after Vertex Fab had already begun operating in the railcar industry and after it had created the valuable railcar design drawings*

31.     On March 26, 2014, Croteau organized Vertex Rail Tech.

32.     At all times, Croteau was the majority owner of Vertex Rail Tech., with 51% of the membership interests at the time of Vertex Rail Tech.'s formation.  Bigda initially owned

35%, while Bauer owned 8%, Katherine Perduta owned 5% and an unidentified investor owned 1%.

33.     Even after Croteau formed Vertex Rail Tech., he and others continued to perform work related to the development of rail opportunities from Vertex Fab's facility in Middleboro, Massachusetts.

34.     While Vertex Rail Tech. leased space in its own name in Mansfield, Massachusetts beginning in July 2014, Croteau, Bauer, and other Vertex Fab employees such as Gregg Tavares and Shane Wiswell, spent much of their time working on Vertex Rail Tech. matters from Vertex Fab's Mansfield location.

35.     Through late 2014, these employees also used their Vertex Fab email addresses continuously in communicating among themselves or with third parties on matters relating to the development of rail opportunities and did not make any distinction between their roles as employees or representatives of Vertex Fab and Vertex Rail Tech.

> ii.  *Croteau transferred Vertex Fab's railcar design drawings to Vertex Rail Tech. for a small fraction of their value*

36.     Croteau caused Vertex Rail Tech. and Vertex Fab to enter into a "Purchase and Sale Agreement for Drawing Package" for the sale of the railcar drawing package (the "Drawing Purchase and Sale Agreement").  See Exhibit 6.  The Drawing Purchase and Sale Agreement was dated as of March 28, 2014, two days after Vertex Rail Tech was organized.

37.     Croteau signed the Drawing Purchase and Sale Agreement on behalf of both entities.  See Exhibit 6, p. 8.

38.     Through the Drawing Purchase and Sale Agreement, the parties acknowledged that Vertex Fab "developed, produced and currently holds all unencumbered rights, title and

interest to the '31,800 Gallon Drawing Package' . . ." that was the subject of the Agreement.  See Exhibit 6, p. 1.

39.    Through the Drawing Purchase and Sale Agreement, Vertex Fab, through Croteau, also "represent[ed] and warrant[ed] to [Vertex Rail Tech.] that Seller own[ed] all right, title and interest in and to the Package." Vertex Fab also agreed to sell, sign, transfer and convey to Vertex Rail Tech. all of Vertex Fab's right, title, and interest to the railcar drawing package and related assets as described in the Agreement.  See Exhibit 6, p. 1.

40.    The Drawing Purchase and Sale Agreement described work already completed by Vertex Fab, including, but not limited to, shop drawings, approved FEA Drawings, Models and Design Package, submittal drawings, and the finalized AAR Certified Package.  See Exhibit 6, p. 1.

41.    Vertex Rail Tech., through Croteau, exercised ownership and control over the Vertex Fab drawing package at all times after March 28, 2014.

42.    The Drawing Purchase and Sale Agreement set forth an agreed-to a purchase price for the railcar-drawing package of $250,000.

43.    This purchase price was at least $1,750,000 less than the valuation provided by Tucker, which Tucker based on Vertex management representations, and $1,750,000 less than what Croteau had represented to possible investment sources.  See Exhibit 4.

44.    On April 2, 2014, Vertex Rail Tech. wired $250,000 to Vertex Fab.

45.    The funds Vertex Rail Tech. transferred to Vertex Fab came from a new customer of Vertex Rail Tech. – Confluence Energy Partners – which had delivered a down payment to Vertex Rail Tech. in connection with an order for a 72-month lease of several hundred railcars.

The terms of this agreement were set forth in a "Letter of Intent and Commitment to Lease Railcars," dated March 26, 2014.  See Exhibit 7.

46.     Upon information and belief, as of April 2014, Vertex Rail Tech. had not received any funds from any other customers and had not received any investments from anyone to capitalize the new company.

47.     Through an e-mail dated March 27, 2014, Croteau directed Bauer to wire the Confluence Energy Partners funds "and on the VFD side put maybe [$]180-200K of it aside for tax issue and then use the rest for short-term stabilization of vertex fab."  See Exhibit 8.

48.     Croteau also directed that "with the confluence money (and maybe keyera too) Katherine [Perduta] and I come off the VFD payroll and go over to VRT...."  See Exhibit 8.

49.     Croteau was taken off the Vertex Fab payroll as of April 2014.  At all times before then, Croteau had been receiving paychecks as a Vertex Fab employee.  Croteau had set his salary while at Vertex Fab at $3,826.94 per week, an annualized salary of approximately $199,000.  In connection with his removal from Vertex Fab's payroll, Croteau also directed that Vertex Fab pay him $9,485.57 as a payment for accrued vacation time.

> iii.  *Using the railcar design drawings transferred from Vertex Fab, Croteau solicited investments in Vertex Rail at the expense of Vertex Fab and its creditors.*

50.     Even after being taken off Vertex Fab's payroll, Croteau continued to use his Vertex Fab e-mail address in connection with his ongoing work in soliciting investors and developing opportunities in the rail industry.

51.     By early 2014, Croteau had begun soliciting potential investment partners for investment in Vertex Rail Tech. and its rail operations.  In connection with these efforts, Croteau

always represented and intended that any investment would need to cover the outstanding liabilities of Vertex Fab.

52.      In his communications in July 2014 with one such potential investor – the Anderson Group – Croteau explained that payment for outstanding Vertex Fab debt was "necessary to the plan or the funding requirement."  See Exhibit 9.

53.      Croteau further informed the Anderson Group "we are all here at this moment because of the work and promises at Vertex Fab."  See Exhibit 9.

### C. Croteau Negotiated the Transfer of Vertex Fab's Valuable Assets, Including Railcar Design Drawings, to a Joint Venture Entity Without any Consideration to Vertex Fab

54.      In around April 2014, Croteau begin negotiating a joint venture with China Southern Rail Corporation, through one of its affiliates, CSR Yangtze Co. LTD ("CSR").[1]

55.      A version of the Joint Venture Agreement was entered into in January 2015 (the "Joint Venture Agreement").

56.      In April of 2015 Vertex Rail Tech., CSR, and Majestic Legend Holdings Limited formed Vertex Rail Corp.

57.      Pursuant to the Joint Venture Agreement, Croteau agreed that he would cause Vertex Rail Tech. to contribute "all its market resources (including but not limited to the client base) and AAR certificates into the New Corporation without any condition."  See Exhibit 10, p. 4.

---

[1] The Trustee understands that CSR and another Chinese rail manufacturer merged or otherwise combined their business operations in around June 2015 to form CRRC Corporation Limited.  According to Vertex Rail Corp.'s website, this new entity is now the joint venture partner in Vertex Rail Corp.  *See* http://www.vertexrail.com/ ("In partnership with China Railway Rolling Stock Corporation (CRRC) – the largest railcar manufacturer in the world – Vertex brings manufacturing expertise, scalability and innovation, design optimization, and extensive experience to the industry.") (Viewed on May 5, 2016).

58.    On April 2, 2015, Croteau signed a manager resolution of Vertex Rail Tech. in which Vertex Rail Tech., through Croteau, resolved: "in furtherance of the joint venture, Vertex Rail Technologies, LLC shall transfer its business to Vertex Railcar Corporation."  See Exhibit 11.

59.    Ultimately, in April 2015, Vertex Rail Tech. transferred all of its assets, including those contemplated by the Joint Venture Agreement, into Vertex Rail Corp. in exchange for a thirty-three percent (33%) interest in Vertex Rail Corp (collectively the "Vertex Rail Corp. Fraudulent Transfers").  Vertex Fab did not receive any consideration for the transfer of assets from Vertex Rail Tech. to Vertex Rail Corp.

60.    CSR received a 22% stake in Vertex Rail Corp.  According to public statements by Croteau or Vertex Rail Tech.'s agents, CSR did not contribute any assets or cash in exchange for its ownership interest in Vertex Rail Corp.  Instead, CSR contributed engineering personnel and "technical manufacturing knowhow". See Exhibit 12.

61.    Vertex Rail Corp.'s third shareholder, Majestic Legend Holdings Limited ("Majestic"), received a 45% ownership interest in Vertex Rail Corp. in exchange for a $6,000,000 initial investment.  See Exhibit 12.

62.    On information and belief, Majestic is a Chinese private equity firm with a close association with a Chinese state-owned technology investment firm.  On information and belief, Majestic became involved in the Vertex Rail Corp. investment as a result of Majestic's connections with CSR.

63.    Using the $6,000,000 purchase price of Majestic's 45% share interest as a measure of the overall value of Vertex Rail Corp. as of its inception, results in a total enterprise value of $13,333,333.

64.    Using this valuation, Vertex Rail Tech.'s 33% share of Vertex Rail Tech. had a value of approximately $4,400,000 as of Vertex Rail Corp.'s incorporation date.  As previously alleged, Vertex Rail Tech. received its shares in exchange for the contribution of the design package, approvals, and Vertex Rail Tech.'s personnel's industry connections and knowhow.

65.    As Croteau acknowledged to CSR and others, Vertex Rail Tech. would not have had any of these assets to contribute if it not for Croteau's use of Vertex Fab's resources and its employee's efforts. See Exhibit 9 & 13.

> i.    *Before any transfer of assets to Vertex Rail Corp., Vertex Rail Tech., CSR, and Croteau were fully aware that Vertex Fab's assets, personnel, and resources had been, and continued to be, used to develop the value that Vertex Rail Tech. was expected to contribute to the joint venture*

66.    Together, Vertex Rail Tech. and CSR held a 55% combined stake in Vertex Rail Corp. upon its incorporation.

67.    CSR knew about Vertex Fab's role in developing the railcar design drawings and the railcar industry opportunities.  CSR also knew about Vertex Fab's role in creating the value that Vertex Rail Tech. was expected to contribute to the joint venture.

68.    In communications with CSR, Croteau acknowledged that Vertex Fab personnel, assets, and resources were the sole source of Vertex Rail Tech.'s value.  See Exhibit 13.

69.    In response to one of CSR's questions in mid-April, 2014 concerning the joint venture opportunity, Croteau informed CSR that Vertex Fab and Croteau "will be putting in equipment and assets and have contributed funds throughout the startup phase of Vertex Rail." See Exhibit 13, p. 5.

70.    Croteau also informed CSR that so-called "legacy revenue" from Vertex Fab's pressure vessel and vacuum chamber work was "being contributed to assist in start up funding." See Exhibit 13, p. 7.

71.     Croteau informed CSR that Vertex Fab had approximately 40 full-time employees, including personnel in the engineering/design group, quality control, manufacturing, purchasing, accounting, sales, product management, and 28 workers in welding/skill positions on the shop floor.  See Exhibit 13, p. 6.

72.     Croteau informed CSR that this entire group of Vertex Fab employees "will be transitioned over to Vertex Rail Tech. as soon as funding is in place and work begins."  See Exhibit 13, p. 6.  Based on this representation and plan, CSR knew that Croteau intended to deliver Vertex Fab's entire workforce to Vertex Rail Tech. in order to allow the new rail enterprise to begin operations on a turn-key basis.

       *ii.   Croteau acknowledged that Vertex Rail Tech. was responsible for satisfying all of Vertex Fab's debts, but in the end Croteau and Vertex Rail Tech. ignored that obligation*

73.     During his negotiations with CSR, Croteau at one point made it a condition that part of the funding for the new venture would be used to close out Vertex Fab and address all of its outstanding liabilities.

74.     CSR knew that Vertex Fab assets and resources had been used to create Vertex Rail Tech.'s value and all of its future railcar market opportunities.  Nonetheless, CSR attempted to avoid the Vertex Fab liabilities by taking the position that the new corporation could not address Vertex Fab's legacy debt.

75.     In response to CSR's resistance to paying any of Vertex Fab's debts, Croteau told CSR:  "The only reason that VRT is here today is because of the time, money, personnel, and skill at VFD. . . . all of that was given to VRT with the understanding that when ready VFD would be closed properly."  See Exhibit 14.

76.     Croteau further explained, "This issue has, since the beginning, been part of our business plan and cannot be casually removed."  Croteau then suggested that the agreement be re-written so that the majority of the invested funds would be allocated to the joint venture "and the balance will go to the closure of VFD away from the JV."  See Exhibit 14.

### iii. Vertex Fab failed to pay substantial creditor debt as its assets were being used for Vertex Rail Tech.'s benefit and then transferred to Vertex Rail Tech. and subsequently to Vertex Rail Corp

77.     As early as late 2013, Vertex Fab was failing to pay its debts when due, including its substantial debt to Recovery Capital.

78.     Vertex Fab failed to make any monthly payments due under the leasing agreement with Recovery Capital after June 1, 2013.

79.     Recovery Capital had sent numerous demand letters since 2012 and threatened to declare a default on the Vertex Fab obligations.  Recovery Capital ultimately filed a lawsuit against Vertex Fab in late 2014.

80.     As of the Petition Date, Vertex Fab owed at least $252,000 to Recovery Capital.

81.     Numerous other vendors and contract parties, including Vertex Fab's landlord Tendco R&D Corp., also sent demand letters for overdue payments or filed lawsuits against Vertex Fab throughout 2014 and early 2015 as a result of Vertex Fab's breaches of its various obligations.

### iv. After Croteau extracted all value and resources from Vertex Fab, the Company was unable to perform its continuing obligations to its customers.

82.     By November 2014, Croteau had all but abandoned Vertex Fab's operations and its customers, even though he was still the manager and sole owner of the company.  Instead, he left Scott Bauer, Gregg Tavares and others to deal with numerous inquiries and complaints by customers concerning the status of their longstanding projects and orders with Vertex Fab.

83.    By November 2014 at the latest, Vertex Fab's customers, including Fuel Cell

Energy ("Fuel Cell"), Encore Environmental ("Encore"), and Teledyne Webb Research

("Teledyne") were sending regular requests for updates on their projects and hearing nothing

back from Vertex Fab in response.

84.    For example, Teledyne had placed an order for a pressure vessel in May, 2014

and that order still had not been completed as of January 2015, despite numerous requests for

status updates on the completion schedule.  See Exhibit 15.

85.    Encore likewise placed a production order with Vertex Fab in around April 2014.

By November 2014, Encore was following up on the status of this order.  Having not heard from

anyone at Vertex Fab, Encore contacted Vertex Fab's manufacturer in China directly.  That

manufacturer informed Encore that it had not yet received the deposit from Vertex Fab that was

required before production would begin.  Encore had in fact given Vertex Fab a deposit of

approximately $120,000, but Vertex Fab only sent approximately $43,000 of that deposit to the

manufacturer.  The manufacturer advised Encore in November 2014 that a payment of $72,000

was required before anything would be done on Encore's order.  Encore then demanded that

Vertex Fab immediately pay the $72,000 to the manufacturer from the deposit funds.  Vertex Fab

was, at that time, not in a position to do so because, according to Scott Bauer, "we don't have

$72K to wire to anyone."  See Exhibit 16.

86.    Finally, as to Fuel Cell, in November 2014, that company was likewise seeking

updates on the status of its order with Vertex Fab.  Fuel Cell sent an email dated November 20,

2014, in which it stated:  "We haven't heard back from you on the progress of the work in the

past two weeks and I would like to touch the base with you and your kind feedback on the status

of the ongoing work . . . ."  See Exhibit 17.  Gregg Tavares then asked Scott Bauer "How do you

want us to respond to Yuan [of Fuel Cell]?" See Exhibit 17. Instead of attending to the actual work of fulfilling Fuel Cell's order, Bauer instructed Tavares: "Don't reply for now" and followed up immediately with a separate email to Tavares stating: "Please tell Christina [of VFD] not to engage [with Fuel Cell] either." See Exhibit 17.

87.    In November 2014, while Bauer and others at Vertex Fab were ignoring Vertex Fab customer work and customer communications, Croteau was continuing to negotiate with CSR for his and Vertex Rail Tech.'s future activities in the rail industry.

88.    In November 2014, Croteau was also working with outside counsel in responding to various creditor claims, including a notice of default and notice to quit that Vertex Fab's landlord served on November 19, 2014. See Exhibit 18. By that date, Croteau was close to being ready to move the rail operations to North Carolina and begin operations there based upon the joint venture with CSR. Thus, upon receiving the landlord's notice of default and notice to quit, Croteau responded in an email to outside counsel: "I would like to discuss but I also think it is time just to give it all back and let them figure it out . . ." See Exhibit 18.

*v.   Vertex Fab was insolvent at all relevant times*

89.    At all times between May 2012 and May 5, 2015, Vertex Fab was insolvent, both from a balance sheet perspective and by virtue of its inability to pay its creditors when due.

90.    Instead of taking any steps to improve Vertex Fab's financial condition and to allow it to pay its creditors, Croteau simply caused the transfer of Vertex Fab's valuable assets to Vertex Rail Tech. and then to Vertex Rail Corp., leaving Vertex Fab with insufficient capital to remain in business or to pay anything to any of its creditors.

91.    Croteau knew of the substantial debt that Vertex Fab had incurred as he prepared for Vertex Fab's transformation into Vertex Rail Tech. He nonetheless used Vertex Fab's

available funds and resources in connection with the new venture and made no provision for the

payment of Vertex Fab's debts.

92.    Instead, after extracting all the value from Vertex Fab for Vertex Rail Tech.'s and

Croteau's benefit, Croteau simply filed a bankruptcy petition for Vertex Fab, with the intention

and expectation that the creditors would receive, at most, pennies on the dollar on their

substantial claims.

### COUNT I

### Avoidance of the Vertex Rail Tech. Fraudulent Transfers Pursuant to 11 U.S.C. §544(b) and Mass. Gen. Laws c. 109A, § 5(a)(2)

93.    The Trustee repeats and realleges the above paragraphs as if fully recited herein.

94.    As alleged above, Croteau caused Vertex Fab to transfer the railcar design

drawings to Vertex Rail Tech. for a small fraction of their value at the time of the transfer.

95.    Croteau also caused Vertex Fab to allocate its employees' resources and efforts to

the rail industry opportunities, to the exclusion of Vertex Fab's customers, pending orders, and

future sales efforts.  This diversion of resources deprived Vertex Fab of any ability to continue.

Neither Vertex Fab nor its creditors received any value in exchange for the diversion of these

employees' efforts.

96.    The transfer of the design drawings through the Drawing Purchase and Sale

Agreement and the diversion of Vertex Fab's employees' efforts and other resources and

opportunities are collectively referred to hereafter as the "Vertex Rail Tech. Fraudulent

Transfers".

97.    The Vertex Rail Tech. Fraudulent Transfers occurred within four years prior to

the Petition Date.

98.    Vertex Fab did not receive any reasonably equivalent value in consideration for

the Vertex Rail Tech. Fraudulent Transfers.

99.     On the date that the Vertex Rail Tech. Fraudulent Transfers were made, the Debtor was engaged or about to engage in a business or a transaction for which the remaining assets of the Debtor were unreasonably small in relation to the business or transaction.

100.    On the date that the Vertex Rail Tech. Fraudulent Transfers were made, the Debtor intended to incur, or believed that the Debtor would incur, debts that would be beyond the Debtor's ability to pay as such debts matured.

101.    The Vertex Rail Tech. Fraudulent Transfers were to an entity wholly controlled and majority-owned by an insider.

102.    Croteau, Vertex Fab's 100% owner, retained possession or control of the property transferred after the Vertex Rail Tech. Fraudulent Transfers.

103.    Before the Vertex Rail Tech. Fraudulent Transfers were made, Vertex Fab had been sued or threatened with suit, notably by Recovery Capital and numerous of its vendors or suppliers.

104.    The Vertex Rail Tech. Fraudulent Transfers were substantially all of Vertex Fab's marketable assets.

105.    After the Vertex Rail Tech. Fraudulent Transfers, Croteau and Vertex Rail Tech. left Massachusetts for North Carolina, where Vertex Rail Tech. set up a new business location using Vertex Fab's assets.

106.    The Vertex Rail Tech. Fraudulent Transfers constituted a fraudulent transfer of property within the meaning of Mass. Gen. Laws c. 109A § 5(a)(2).

107.    As of the Petition Date, there existed at least one unsecured creditor of the Debtor who maintained the right to avoid the Vertex Rail Tech. Fraudulent Transfers pursuant to Mass.

Gen. Laws c 109A § 5(a)(2).

108.   As a result, the Trustee is entitled to avoid, pursuant to Mass. Gen. Laws c. 109A

§ 5(a)(2) the Vertex Rail Tech. Fraudulent Transfers.

## COUNT II

### Avoidance of the Vertex Rail Corp. Fraudulent Transfers Pursuant to 11 U.S.C. §544(b) and Mass. Gen. Laws c. 109A, § 5(a)(2)

109.   The Trustee repeats and realleges the above paragraphs as if fully recited herein.

110.   Croteau, through Vertex Rail Tech., transferred Vertex Fab's most valuable

assets, including the railcar design drawings, and its railcar market resources, which had been

developed through Vertex Fab's efforts, to Vertex Rail Corp.  These transfers to Vertex Rail

Corp. are hereafter collectively referred to as the "Vertex Rail Corp. Fraudulent Transfers."

111.   The Vertex Rail Corp. Fraudulent Transfers occurred within four years prior to

the Petition Date.

112.   Vertex Fab did not receive any reasonably equivalent value in consideration for

the Vertex Rail Corp. Fraudulent Transfers.

113.   On the date that the Vertex Rail Corp. Fraudulent Transfers were made, the

Debtor was engaged or about to engage in a business or a transaction for which the remaining

assets of the Debtor were unreasonably small in relation to the business or transaction.

114.   On the date that the Vertex Rail Corp. Fraudulent Transfers were made, the

Debtor intended to incur, or believed that the Debtor would incur, debts that would be beyond

the Debtor's ability to pay as such debts matured.

115.   The Vertex Rail Corp. Fraudulent Transfers constituted a fraudulent transfer of

property within the meaning of Mass. Gen. Laws c. 109A § 5(a)(2).

116.   As of the Petition Date, there existed at least one unsecured creditor of the Debtor

who maintained the right to avoid the Vertex Rail Corp. Fraudulent Transfers pursuant to Mass. Gen. Laws c 109A § 5(a)(2).

117.    As a result, the Trustee is entitled to avoid the Vertex Rail Corp. Fraudulent Transfers pursuant to Mass. Gen. Laws c. 109A § 5(a)(2).

## COUNT III

### Avoidance of the Vertex Rail Tech. Fraudulent Transfers Pursuant to 11 U.S.C. §544(b) and Mass. Gen. Laws c. 109A, § 6(a)

118.    The Trustee repeats and realleges the above paragraphs as if fully recited herein.

119.    Vertex Fab did not receive any reasonably equivalent value in consideration for the Vertex Rail Tech. Fraudulent Transfers.

120.    On the date of the Vertex Rail Tech. Fraudulent Transfers, Vertex Fab was either insolvent or became insolvent as a result thereof.

121.    Vertex Fab's transfers to Vertex Rail Tech. constituted a fraudulent transfer of property within the meaning of Mass. Gen. Laws c. 109A § 6(a).

122.    As of the Petition Date, there existed at least one unsecured creditor of the Debtor who maintained the right to avoid the Vertex Rail Tech. Fraudulent Transfers pursuant to Mass. Gen. Laws c 109A § 6(a).

123.    As a result, the Trustee is entitled to avoid, pursuant to Mass. Gen. Laws c. 109A § 6(a) the transfers to Vertex Rail Tech.

## COUNT IV

### Avoidance of the Vertex Rail Corp. Fraudulent Transfer Pursuant to 11 U.S.C. §544(b) and Mass. Gen. Laws c. 109A, § 6(a)

124.    The Trustee repeats and realleges the above paragraphs as if fully recited herein.

125.    Vertex Fab did not receive any reasonably equivalent value in consideration for the Vertex Rail Corp. Fraudulent Transfers.

126.     On the date of the Vertex Rail Corp. Fraudulent Transfers, Vertex Fab was either insolvent or became insolvent as a result thereof.

127.     The Vertex Rail Corp. Fraudulent Transfers constituted a fraudulent transfer of property within the meaning of Mass. Gen. Laws c. 109A § 6(a).

128.     As of the Petition Date, there existed at least one unsecured creditor of the Debtor who maintained the right to avoid the Vertex Rail Corp. Fraudulent Transfers pursuant to Mass. Gen. Laws c 109A § 6(a).

129.     As a result, the Trustee is entitled to avoid, pursuant to Mass. Gen. Laws c. 109A § 6(a) the transfer to Vertex Rail Corp.

## COUNT V

### Avoiding the Vertex Rail Tech. Fraudulent Transfer Pursuant to 11 U.S.C. § 548(a)(1)(B)

130.     The Trustee repeats and realleges the above paragraphs as if fully recited herein.

131.     The Vertex Rail Tech. Fraudulent Transfers occurred within two years prior to the Petition Date.

132.     Vertex Fab did not receive any reasonably equivalent value in consideration for the Vertex Rail Tech. Fraudulent Transfers.

133.     On the date of the Vertex Rail Tech. Fraudulent Transfers, Vertex Fab was either insolvent or became insolvent as a result thereof.

134.     On the date of the Vertex Rail Tech. Fraudulent Transfers, Vertex Fab was engaged in a business or a transaction for which the remaining assets of Vertex Fab were unreasonably small in relation to the business or transaction.

135.    On the date of the Vertex Rail Tech. Fraudulent Transfers, the Debtor intended to incur, or believed that the Debtor would incur, debts that would be beyond the Debtor's ability to pay as such debts matured.

136.    The Vertex Rail Tech. Fraudulent Transfers were to or for the benefit of an insider and not in the ordinary course of business.

137.    Vertex Fab's transfers to Vertex Rail Tech. constituted a fraudulent transfer of property within the meaning of 11 U.S.C. § 548(a)(1)(B).

## <u>COUNT VI</u>

### <u>Avoiding the Vertex Rail Corp. Fraudulent Transfer Pursuant to 11 U.S.C. §548(a)(1)(B)</u>

138.    The Trustee repeats and realleges the above paragraphs as if fully recited herein.

139.    The Vertex Rail Corp. Fraudulent Transfers occurred within two years prior to the Petition Date.

140.    Vertex Fab did not receive any reasonably equivalent value in consideration for the Vertex Rail Corp. Fraudulent Transfers.

141.    On the date of the Vertex Rail Corp. Fraudulent Transfers, Vertex Fab was either insolvent or became insolvent as a result thereof.

142.    On the date of the Vertex Rail Corp. Fraudulent Transfers, Vertex Fab was engaged in a business or a transaction for which the remaining assets of Vertex Fab were unreasonably small in relation to the business or transaction.

143.    On the date of the Vertex Rail Corp. Fraudulent Transfers, the Debtor intended to incur, or believed that the Debtor would incur, debts that would be beyond the Debtor's ability to pay as such debts matured.

144.    The Vertex Rail Corp. Fraudulent Transfers were to or for the benefit of an insider of the Debtor and not in the ordinary course of business.

145.    The Vertex Rail Corp. Fraudulent Transfers constituted a fraudulent transfer of property within the meaning of 11 U.S.C. § 548(a)(1)(B).

## COUNT VII

### Recovery of the Vertex Rail Tech. Fraudulent Transfers Pursuant to 11 U.S.C. § 550 against Vertex Rail Tech.

146.    The Trustee repeats and realleges the above paragraphs as if fully recited herein.

147.    Vertex Rail Tech. was the transferee for whose benefit the Vertex Rail Tech. Fraudulent Transfers were made.

148.    To the extent the Vertex Rail Tech. Fraudulent Transfers can be avoided pursuant to 11 U.S.C. § 544(b) and Mass. Gen. Laws c. 109A, § 5(a)(2), the Trustee can recover the value of the Fraudulent Transfer under 11 U.S.C. § 550(a).

## COUNT VIII

### Recovery of the Vertex Rail Corp. Fraudulent Transfers Pursuant to 11 U.S.C. § 550 against Vertex Rail Corp.

149.    The Trustee repeats and realleges the above paragraphs as if fully recited herein.

150.    Vertex Rail Corp. was the transferee for whose benefit the Vertex Rail Corp. Fraudulent Transfers were made.

151.    At all times, CSR and Vertex Rail Tech. both knew that Vertex Rail Tech. was contributing Vertex Fab's assets to the joint venture entity, Vertex Rail Corp.

152.    CSR knew from its communications with Croteau that Vertex Fab's equipment, assets, and funding had been contributed throughout Vertex Rail Tech.'s start-up phase.

153.    CSR knew of Croteau's stated plan that all of Vertex Fab's employees would be transitioned to Vertex Rail Tech. once it began operations.

154.    CSR knew, because Croteau told it, that "the only reason Vertex Rail Tech. is here today is because of the time, money, personnel, and skill at Vertex Fab . . . all of that was given to Vertex Rail Tech. with the understanding that when ready Vertex Fab would be closed properly."

155.    CSR proceeded with the joint venture and formation of Vertex Rail Corp. with full knowledge that Vertex Rail Tech. was contributing Vertex Fab's assets.

156.    CSR and Vertex Rail Tech. together held 55% of the ownership interests in Vertex Rail Corp. as of the date of Vertex Rail Corp.'s incorporation. Croteau personally, and representatives appointed by CSR, also held director and officer positions with Vertex Rail Corp. as of its incorporation.  CSR's and Vertex Rail Tech.'s pre- incorporation knowledge is therefore imputed to Vertex Rail Corp. from the date of its incorporation onward.

157.    Vertex Rail Corp. did not act as a good faith transferee of the assets that Vertex Rail Tech., nominally, contributed to the joint venture.

158.    At all times, Vertex Rail Corp. had both and actual and imputed knowledge, through Croteau and CSR, of the voidability of the transfers that the Trustee seeks to avoid herein.

159.    To the extent the Vertex Rail Corp. Fraudulent Transfers can be avoided pursuant to 11 U.S.C. § 544(b) and Mass. Gen. Laws c. 109A, § 5(a)(2), the Trustee can recover the value of the Fraudulent Transfer under 11 U.S.C. § 550(b).

## COUNT IX

### Recovery of Vertex Rail Tech. Fraudulent Transfers Pursuant to 11 U.S.C. § 550 against Vertex Rail Tech.

160.    The Trustee repeats and realleges the above paragraphs as if fully recited herein.

161.    Vertex Rail Tech. was the transferee for whose benefit the Vertex Rail Tech.

Fraudulent Transfers were made.

162.    To the extent the Vertex Rail Tech. Fraudulent Transfers can be avoided pursuant to 11 U.S.C. § 544(b) and Mass. Gen. Laws c. 109A, § 6(a), the Trustee can recover the value of the Vertex Rail Tech. Fraudulent Transfers under 11 U.S.C. § 550(a).

## COUNT X

### Recovery of Vertex Rail Corp. Fraudulent Transfer Pursuant to 11 U.S.C. § 550 against Vertex Rail Corp.

163.    The Trustee repeats and realleges the above paragraphs as if fully recited herein.

164.    Vertex Rail Corp. was the transferee for whose benefit the Vertex Rail Corp. Fraudulent Transfers were made.

165.    At all times, CSR and Vertex Rail Tech. both knew that Vertex Rail Tech. was contributing Vertex Fab's assets to the joint venture entity, Vertex Rail Corp.

166.    CSR knew from its communications with Croteau that Vertex Fab's equipment, assets, and funding had been contributed throughout Vertex Rail Tech.'s start-up phase.

167.    CSR knew of Croteau's plan that all of Vertex Fab's employees would be transitioned to Vertex Rail Tech. once it began operations.

168.    CSR knew, because Croteau told it, that "the only reason Vertex Rail Tech. is here today is because of the time, money, personnel, and skill at Vertex Fab . . . all of that was given to Vertex Rail Tech. with the understanding that when ready Vertex Fab would be closed properly."

169.    CSR proceeded with the joint venture and formation of Vertex Rail Corp. with full knowledge that Vertex Rail Tech. was contributing Vertex Fab's assets.

170.    Vertex Rail Corp. did not act as a good faith transferee of the assets that Vertex Rail Tech., nominally, contributed to the joint venture.

171.    Vertex Rail Corp. had both and actual and imputed knowledge, through Croteau and CSR, of the voidability of the transfers that the Trustee seeks to avoid herein.

172.    To the extent the Vertex Rail Corp. Fraudulent Transfers can be avoided pursuant to 11 U.S.C. § 544(b) and Mass. Gen. Laws c. 109A, § 6(a), the Trustee can recover the value of the Vertex Rail Corp. Fraudulent Transfers under 11 U.S.C. § 550(b).

## COUNT XI

### Recovery of the Vertex Rail Tech. Fraudulent Transfers Pursuant to 11 U.S.C. § 550 against Vertex Rail Tech.

173.    The Trustee repeats and realleges the above paragraphs as if fully recited herein.

174.    Vertex Rail Tech. was the transferee for whose benefit the Vertex Rail Tech. Fraudulent Transfers were made.

175.    To the extent the Vertex Rail Tech. Fraudulent Transfers can be avoided pursuant to 11 U.S.C. § 548(a)(1)(B), the Trustee can recover the value of the Fraudulent Transfer under 11 U.S.C. § 550(a).

## COUNT XII

### Recovery of the Vertex Rail Corp. Fraudulent Transfers Pursuant to 11 U.S.C. § 550 against Vertex Rail Corp.

176.    The Trustee repeats and realleges the above paragraphs as if fully recited herein.

177.    Vertex Rail Corp. was the transferee for whose benefit the Vertex Rail Corp. Fraudulent Transfers were made.

178.    At all times, CSR and Vertex Rail Tech. both knew that Vertex Rail Tech. was contributing Vertex Fab's assets to the joint venture entity, Vertex Rail Corp.

179.    CSR knew from its communications with Croteau that Vertex Fab's equipment, assets, and funding had been contributed throughout Vertex Rail Tech.'s start-up phase.

180.     CSR knew of Croteau's stated plan that all of Vertex Fab's employees would be transitioned to Vertex Rail Tech. once it began operations.

181.     CSR knew, because Croteau told it, that "the only reason Vertex Rail Tech. is here today is because of the time, money, personnel, and skill at Vertex Fab . . . all of that was given to Vertex Rail Tech. with the understanding that when ready Vertex Fab would be closed properly."

182.     CSR proceeded with the joint venture and formation of Vertex Rail Corp. with full knowledge that Vertex Rail Tech. was contributing Vertex Fab's assets.

183.     CSR and Vertex Rail Tech. together held 55% of the ownership interests in Vertex Rail Corp. as of the date of Vertex Rail Corp.'s incorporation. Croteau personally, and representatives appointed by CSR, also held director and officer positions with Vertex Rail Corp. as of its incorporation.  CSR's and Vertex Rail Tech.'s pre- incorporation knowledge is therefore imputed to Vertex Rail Corp. from the date of its incorporation onward.

184.     Vertex Rail Corp. did not act as a good faith transferee of the assets that Vertex Rail Tech., nominally, contributed to the joint venture.

185.     At all times, Vertex Rail Corp. had both and actual and imputed knowledge, through Croteau and CSR, of the voidability of the transfers that the Trustee seeks to avoid herein.

186.     To the extent the Vertex Rail Corp. Fraudulent Transfers can be avoided pursuant to 11 U.S.C. § 548(a)(1)(B), the Trustee can recover the value of the Fraudulent Transfer under 11 U.S.C. § 550(b).

## COUNT XIII

### Successor Liability Through Vertex Rail Tech.'s Assumption of Vertex Fab Liabilities

187.    The Trustee repeats and realleges the above paragraphs as if fully recited herein.

188.    Croteau formed Vertex Rail Tech. for continuing Vertex Fab's work concerning the design of railcars for later manufacture and sale.  In connection with the formation and operation of Vertex Rail Tech., Croteau caused Vertex Fab to transfer the majority of its valuable assets of Vertex Fab, including railcar designs.

189.    Croteau acknowledged that Vertex Fab contributed all its assets and resources to the rail venture and at all times until the end of his negotiations with CSR intended that Vertex Fab's debts would be paid in connection with the formation and funding of the new venture. See Exhibits 9 & 14.

190.    As a result of the facts set forth above, Vertex Rail Tech. is the legal successor to Vertex Fab and is therefore liable to the Trustee for all of Vertex Fab's debts under the equitable theory of successor liability, based upon Vertex Rail Tech.'s assumption of Vertex Fab's liabilities.  These liabilities include those creditor claims filed in Vertex Fab's bankruptcy case, any future judgments the Trustee obtains through this Adversary Complaint, and all the administrative and other expenses the Trustee incurs in administering the bankruptcy estate.

## COUNT XIV

### Successor Liability Through a "De Facto Merger" Theory of Liability

191.    The Trustee repeats and realleges the above paragraphs as if fully recited herein.

192.    Croteau formed Vertex Rail Tech. for continuing Vertex Fab's work concerning the design of railcars for later manufacture and sale.  In connection with the formation and operation of Vertex Rail Tech., Croteau caused Vertex Fab to transfer the majority of its valuable

assets, including its railcar designs.

193.    The transfer of all Vertex Fab's valuable assets to Vertex Rail Tech. satisfies the

de facto merger theory of successor liability.

194.    Following the Vertex Rail Tech. Fraudulent Transfers, there was a continuation of

Vertex Fab's enterprise such that there was continuity of management, key personnel, assets, and

general business operations.

195.    Following the Vertex Rail Tech. Fraudulent Transfers, there was a continuity of

shareholders in that Croteau remained the majority, and controlling, owner of both companies.

196.    Following the Vertex Rail Tech. Fraudulent Transfers Vertex Fab ceased its

business through the bankruptcy filing as soon as Croteau caused Vertex Rail Tech. to transfer

all Vertex Fab's assets and was ready to close on the joint venture with CSR and ready to move

the operations to a new plant in North Carolina.

197.    Following the Vertex Rail Tech. Fraudulent Transfers, Vertex Rail Tech. made

arrangements for the assumption by Vertex Rail Tech., through the joint venture entity, of all of

Vertex Fab's obligations, including payroll, and other obligations to suppliers, which were

necessary for the uninterrupted continuation of Vertex Fab's business operations, as those

operations were constituted after Croteau redirected Vertex Fab's assets and employee efforts

exclusively toward the railcar industry.

198.    As a result of the facts set forth above, Vertex Rail Tech. is the legal successor to

Vertex Fab and is therefore liable to the Trustee under the equitable theory of successor liability

based upon a de facto theory of successor liability for all of Vertex Fab's liabilities.  These

liabilities include those creditor claims filed in Vertex Fab's bankruptcy case, any future

judgments the Trustee obtains through this Adversary Complaint, and all the administrative and

other expenses the Trustee incurs in administering the bankruptcy estate.

## COUNT XV

### Successor Liability Through a "Mere Continuation" Theory of Liability

199.    The Trustee repeats and realleges the above paragraphs as if fully recited herein.

200.    Croteau formed Vertex Rail Tech. for continuing Vertex Fab's work concerning the design of railcars for later manufacture and sale.  In connection with the formation and operation of Vertex Rail Tech., Croteau caused Vertex Fab to transfer the majority of its valuable assets, including railcar designs.

201.    Vertex Fab transferred substantial and valuable assets to Vertex Rail Tech.

202.    Vertex Rail Tech. paid nominal consideration for these assets through the Drawing Purchase and Sale Agreement, and in so doing extracted millions of dollars' worth of AAR-approved rail car design drawings and employee know-how for virtually no value.

203.    Vertex Rail Tech. continued the rail car industry operations that Croteau began through Vertex Fab.

204.    There was a continuity of management between Vertex Fab and Vertex Rail Tech., through Croteau as sole managing manager of each.

205.    There was also a continuity of the controlling stockholder/member, as Croteau was the sole or majority member of Vertex Fab and Vertex Rail Tech., respectively.

206.    Because Vertex Fab and Vertex Rail Tech. had functioned as a single entity throughout their joint existence, there remained a single, unified entity in existence after the Vertex Fab assets were formally transferred to Vertex Rail Tech. and then to Vertex Rail Corp. through the joint venture.

207.    Finally, Vertex Fab was unable to satisfy any of its obligations to its creditors

because of the transfer.

208.    As a result of the facts set forth above, Vertex Rail Tech. is the legal successor to

Vertex Fab and is therefore liable to the Trustee under the equitable theory of successor liability

based upon a "mere continuation" theory of successor liability for all of Vertex Fab's debts.

These debts include those creditor claims filed in Vertex Fab's bankruptcy case, any future

judgments the Trustee obtains through this Adversary Complaint, and all the administrative and

other expenses the Trustee incurs in administering the bankruptcy estate.

## COUNT XVI

### Successor Liability Through a Fraudulent Transfer Theory of Liability

209.    The Trustee repeats and realleges the above paragraphs as if fully recited herein.

210.    Croteau formed Vertex Rail Tech. for continuing Vertex Fab's work concerning

the design of railcars for later manufacture and sale.  In connection with the formation and

operation of Vertex Rail Tech., Croteau caused Vertex Fab to transfer the majority of its valuable

assets, including railcar designs.

211.    Vertex Rail Tech.'s extraction of Vertex Fab's assets, which left Vertex Fab an

empty shell, was intended as a fraudulent effort to avoid Vertex Fab's liabilities.

212.    Croteau knew of the substantial debt that Vertex Fab had incurred as it prepared

for its transformation into Vertex Rail Tech.  He nonetheless used Vertex Fab's available assets

and employee resources solely in connection with the development and implementation of the

new railcar industry venture and ultimately made no provision for the payment of Vertex Fab's

debts.

213.    Instead, after extracting all the value from Vertex Fab for Vertex Rail Tech.'s and

Croteau's benefit, Croteau simply filed a bankruptcy petition for Vertex Fab, with the intention

and expectation that the creditors would receive, at most, pennies on the dollar on their substantial claims.

214.     As a result of the facts set forth above, Vertex Rail Tech. is the legal successor to Vertex Fab and is therefore liable to the Trustee under the equitable theory of successor liability based upon the fraudulent transfer of Vertex Fab's assets. Vertex Rail Tech. is thus liable for all of Vertex Fab's debts, including those creditor claims filed in Vertex Fab's bankruptcy case, any future judgments the Trustee obtains through this Adversary Complaint, and all the administrative and other expenses the Trustee incurs in administering the bankruptcy estate.

## COUNT XVII

### Declaratory Judgment – 28 U.S.C. § 2201 and M.G.L. c. 231A

215.     The Trustee repeats and realleges the above paragraphs as if fully recited herein.

216.     An actual controversy exists between the Trustee and Vertex Rail Tech. pursuant to 28 U.S.C. § 2201 and M.G.L. c. 231A, § 1, et. seq. regarding whether Vertex Rail Tech. is liable under any of the foregoing successor liability counts to the Trustee for all of Vertex Fab's debts, including those creditor claims filed in Vertex Fab's bankruptcy case, and for any future judgments the Trustee obtains through this Adversary Complaint, and all the administrative and other expenses the Trustee incurs in administering the bankruptcy estate.

217.     The Trustee has made a demand on Vertex Rail Tech. for the full value of the Vertex Rail Tech. Fraudulent Transfers.  Despite demand, Vertex Rail Tech. has not made any payment to the Trustee for the Vertex Rail Tech. Fraudulent Transfers.

218.     On information and belief, Vertex Rail Tech. failed and refused to make this payment because it disputes that it is liable to the Trustee as Vertex Fab's successor.

219.     The Trustee, therefore, seeks a declaration that Vertex Rail Tech. is liable to the

Trustee for the Vertex Rail Tech. Fraudulent Transfers and for any future judgments the Trustee

obtains.

## COUNT XVIII

### Breach of Fiduciary Duty of Care
### (Against Donald Croteau)

220.    The Trustee repeats and realleges the above paragraphs as if fully recited herein.

221.    As the sole manager of Vertex Fab, Croteau owed a duty of care to Vertex Fab.

222.    Croteau was charged with planning for and managing the continuing operations of

Vertex Fab business.  While he was entitled to delegate certain managerial duties to Vertex Fab's

other officers or other qualified personnel, his duty to monitor Vertex Fab's management

remained and he was ultimately responsible for ensuring that Vertex Fab was managed with the

best interests of Vertex Fab and its creditors in mind.

223.    Throughout the entire time Croteau was the sole manager of Vertex Fab, from

May 2012 until approximately May 2015, he owed a fiduciary duty to perform his duties in a

manner he reasonably believed to be in the best interests of Vertex Fab and with such care,

including reasonable inquiry, skill and diligence, as a person of ordinary prudence would use

under the circumstances.

224.    Because Vertex Fab was insolvent at all times from 2012 onward, Croteau owed

fiduciary duties not only to Vertex Fab, but he also owed a fiduciary duty to Vertex Fab's

creditors.

225.    Croteau breached his duty of care by orchestrating the transfers of Vertex Fab's

drawings, personnel, and other resources to activities that solely benefited Vertex Rail Tech. and

Croteau.  Instead of making these assets available to Vertex Fab and its creditors, Croteau

instead used these assets for his sole benefit by transferring them to Vertex Rail Tech., a

company he completely controlled and majority-owned.

226.    Croteau's breaches of his fiduciary duty of care left Vertex Fab with insufficient funds to continue to operate or pay its substantial obligations to its creditors.

227.    Vertex Fab and its creditors did not benefit in any way from Croteau's transfers of Vertex Fab assets to Vertex Rail Tech.  Instead, Vertex Fab was unable to continue operations or to make any payments to its creditors as of the date Croteau caused the company to file for bankruptcy.

228.    For his part, Croteau improperly benefited from his transfers of Vertex Fab's assets to Vertex Rail Tech. and later to Vertex Rail Corp.  Among other things, Croteau used Vertex Fab's assets and their value in connection with the negotiation of his own lucrative employment arrangements with Vertex Rail Corp.

229.    Through the above-referenced misconduct, Croteau breached his fiduciary duty of care toward Vertex Fab because no manager of a limited liability company acting in good faith could have believed that the transfers of Vertex Fab's assets and redirection of employee efforts and resources were in the best interests of Vertex Fab and its creditors.

230.    As a result of the above-described breaches of Croteau's fiduciary duty of care, Vertex Fab and its creditors have been damaged in an amount to be determined at trial.  These damages include, at a minimum, all creditor claims filed against the Debtor's bankruptcy estate and all the fees and costs incurred by the Trustee in administering this bankruptcy estate.

## COUNT XIX

### Breach of Fiduciary Duty of Loyalty
### (Against Donald Croteau)

231.    The Trustee repeats and realleges the above paragraphs as if fully recited herein.

232.    As the sole manager of Vertex Fab, Croteau owed a duty of loyalty to Vertex Fab.

233.    This duty of loyalty required Croteau to perform his managerial obligations in good faith and with a view toward promoting the interests of Vertex Fab and its creditors and not his, Vertex Rail Tech.'s, or Vertex Rail Corp.'s interests.

234.    Because Vertex Fab was insolvent at all times from 2012 onward, Croteau owed fiduciary duties not only to Vertex Fab, but he also owed a fiduciary duty to Vertex Fab's creditors.

235.    Croteau breached his duty of loyalty by orchestrating the transfers or allocation of Vertex Fab's drawings, personnel, and other resources, to activities that solely benefited Vertex Rail Tech. and Croteau.  Instead of making these assets available to the company and its creditors, Croteau instead used them for his sole benefit by transferring them to Vertex Rail Tech., a company he completely controlled and majority owned. Croteau further improperly favored his own interest in Vertex Rail Tech. over Vertex Fab and its creditors' interests through the transfers that he made to Vertex Rail Corp.

236.    Croteau did not act independently or disinterestedly when he allowed the above transactions to occur, nor did he base his decisions on the best interests of Vertex Fab or its creditors.

237.    Vertex Fab and its creditors did not benefit in any way from Croteau's transfers of Vertex Fab assets to Vertex Rail Tech or from his later transfer of those assets to Vertex Rail Corp.

238.    Instead, Croteau's breaches of his fiduciary duty of loyalty left Vertex Fab unable to continue operations and with insufficient funds to pay its substantial obligations to its creditors.

239.    For his part, Croteau improperly benefited from his transfers of Vertex Fab's

36

assets to Vertex Rail Tech. and later to Vertex Rail Corp. Croteau also used Vertex Fab's assets and their value in connection with the negotiation of his own lucrative employment arrangements with Vertex Rail Corp.

240.    Through the above referenced improper transfers and other misconduct, Croteau breached his fiduciary duty of loyalty to Vertex Fab and its creditors because Croteau acted solely in furtherance of his interests in Vertex Rail Tech. without regard to the best interests of Vertex Fab and its creditors.

241.    As a result of the above-described breaches of Croteau's fiduciary duty of loyalty, Vertex Fab and its creditors have been damaged in an amount to be determined at trial. These damages include, at a minimum, all creditor claims filed against the Debtor's bankruptcy estate and all the fees and costs incurred by the Trustee in administering this bankruptcy estate.

WHEREFORE, the Trustee requests that judgment enter as follows:

(1)    On Count I, avoiding the Vertex Rail Tech. Fraudulent Transfers as a fraudulent transfer under 11 U.S.C. § 544(b) and Mass. Gen. Laws c. 109A § 5(a)(2);

(2)    On Count II, avoiding the Vertex Rail Corp. Fraudulent Transfers as a fraudulent transfer under 11 U.S.C. § 544(b) and Mass. Gen. Laws c. 109A § 5(a)(2);

(3)    On Count III, avoiding the Vertex Rail Tech. Fraudulent Transfers as a fraudulent transfer under 11 U.S.C. § 544(b) and Mass. Gen. Laws c. 109A § 6(a);

(4)     On Count IV, avoiding the Vertex Rail Corp. Fraudulent Transfers as a fraudulent transfer under 11 U.S.C. § 544(b) and Mass. Gen. Laws c. 109A § 6(a);

(5)     On Count V, avoiding the Vertex Rail Tech. Fraudulent Transfers as a fraudulent transfer under 11 U.S.C. § 548(a)(1)(B);

(6)     On Count VI, avoiding the Vertex Rail Corp. Fraudulent Transfers as a fraudulent transfer under 11 U.S.C. § 548(a)(1)(B);

(7)     On Count VII, granting recovery of the Vertex Rail Tech. Fraudulent Transfers by the Trustee under § 550(a) of the Bankruptcy Code and avoided pursuant to 11 U.S.C. § 544(b) and Mass. Gen. Laws c. 109A § 5(a)(2);

(8)     On Count VIII, granting recovery of the Vertex Rail Corp. Fraudulent Transfers by the Trustee under § 550(b) of the Bankruptcy Code and avoided pursuant to 11 U.S.C. § 544(b) and Mass. Gen. Laws c. 109A § 5(a)(2);

(9)     On Count IX, granting recovery of the Vertex Rail Tech. Fraudulent Transfers by the Trustee under § 550(a) of the Bankruptcy Code and avoided pursuant to 11 U.S.C. § 544(b) and Mass. Gen. Laws c. 109A § 6(a);

(10)    On Count X, granting recovery of the Vertex Rail Corp. Fraudulent Transfers by the Trustee under § 550(b) of the Bankruptcy Code and avoided pursuant to 11 U.S.C. § 544(b) and Mass. Gen. Laws c. 109A § 6(a);

(11)    On Count XI, granting recovery of the Vertex Rail Tech. Fraudulent Transfers by the Trustee under § 550(b) of the Bankruptcy Code and avoided pursuant to 11 U.S.C. § 548(a)(1)(B);

(12)     On Count XII, granting recovery of the Vertex Rail Corp. Fraudulent
Transfers by the Trustee under § 550(b) of the Bankruptcy Code and avoided
pursuant to 11 U.S.C. § 548(a)(1)(B);

(13)     On Count XIII, entering judgment against Vertex Rail Tech. as the legal
successor to Vertex Fab, pursuant to Vertex Rail Tech.'s express or implied
assumption of Vertex Fab liabilities, for the total amount of the Vertex Rail
Tech. Fraudulent Transfers and for any future judgments the Trustee obtains
against Vertex Rail Tech.;

(14)     On Count XIV, entering judgment against Vertex Rail Tech. as the legal
successor to Vertex Fab, pursuant to Vertex Fab's de facto merger or
consolidation with Vertex Rail Tech., for the total amount of the Vertex Rail
Tech. Fraudulent Transfers and for any future judgments the Trustee obtains
against Vertex Rail Tech.;

(15)     On Count XV, entering judgment against Vertex Rail Tech. as the legal
successor to Vertex Fab, pursuant to Vertex Rail Tech.'s mere continuation of
Vertex Fab operations, for the total amount of the Vertex Rail Tech.
Fraudulent Transfers and for any future judgments the Trustee obtains against
Vertex Rail Tech.;

(16)     On Count XVI, entering judgment against Vertex Rail Tech. as the legal
successor to Vertex Fab, pursuant to Vertex Rail Tech.'s fraudulent effort to
avoid Vertex Fab liabilities, for the total amount of the Vertex Rail Tech.
Fraudulent Transfers and for any future judgments the Trustee obtains against
Vertex Rail Tech.;

(17)      On Count XVII, declaring that Vertex Rail Tech. is liable to the Trustee, pursuant to any or all of the Successor Liability theories of liability as alleged in Counts XIII through XVI, for the total amount of the Vertex Rail Tech. Fraudulent Transfers and for any future judgments the Trustee obtains against Vertex Rail Tech.;

(18)      On Count XVIII, entering judgment against the Defendant Donald Croteau in an amount equal to the total damages suffered by the Debtor, its creditors, and the Debtor's bankruptcy estate as a result of Croteau's breaches of his fiduciary duty of care;

(19)      On Count XIX, entering judgment against the Defendant Donald Croteau in an amount equal to the total damages suffered by the Debtor, its creditors, and the Debtor's bankruptcy estate as a result of Croteau's breaches of his fiduciary duty of loyalty;

(20)      Awarding the Plaintiff his costs and expenses incurred in prosecuting this adversary proceeding, including without limitation, reasonable attorneys' fees and costs; and

(21)      Granting the Plaintiff such other and further relief as the Court deems just and proper.

**DONALD R. LASSMAN, CHAPTER 7 TRUSTEE FOR VERTEX FAB & DESIGN, LLC**

By his attorneys,


        /s/ Michael P. Connolly
Mark G. DeGiacomo – BBO #118170
Michael P. Connolly – BBO #637642
Anthony R. Leone – BBO #681760
Murtha Cullina LLP
99 High Street
Boston, MA 02110-2320
617-457-4000
mdegiacomo@murthalaw.com
mconnolly@murthalaw.com
aleone@murthalaw.com

Dated:  August 4, 2016